Nichols, C. J.
The particular question involved in the instant case is whether the words “personal injuries sustained in the course of employment” as used in. the workmen’s compensation law, approved June 15, 1911 (102 O. L., 524), include lead poisoning contracted in course of employment.
The defendant in error was employed in August, 1913, by The Eagle White Lead Co. of Cincinnati, such company being at the time a voluntary contributor to the state insurance fund. While thus employed Brown contracted lead poisoning of so serious a nature that he became sick and disabled from work. He made application for compensation to the state liability board of awards, and its successor, the industrial commission of Ohio, disallowed his claim. In January, 1914, Brown filed in the court of common pleas of Hamilton county his appeal from the decision of such industrial commission, in conformity with the provisions of the law. Trial was had, resulting in a verdict and judgment in favor of Brown, and this judgment was affirmed by the court of appeals of the same county.
Reversal of the judgments is now sought by the state.
The question is one of paramount public importance, not only to the industrial classes but to *311 the state as well. The state has been administering this great trust for nearly four years, and during all that period the construction given the statute under consideration by the ¿dministrative body has been such as to preclude recovery for occupational disease, or any disease for that matter, incurred in the course of employment. For while the disease under consideration was clearly occupational, yet if the claim of Brown to participate in the fund be sustained, it would at once open wide the doors to all claimants who have suffered from disease of any sort which they may have incurred while employed.
The premium rates assessed and collected by the administering board during this period of time have been fixed on a basis of death and injuries by accident solely, to the entire exclusion of injury through disease. It is quite patent that any other construction would necessitate an immediate and striking horizontal elevation of all premium rates and would in all probability prove a serious menace to the law itself.
Administrative interpretation of a given law, while not conclusive, is, if long continued, to be reckoned with most seriously and is not to be disregarded and set aside unless judicial construction makes it imperative so to do. This might be said to be particularly true of laws of the nature and character of the one under consideration. The state has entered on a virgin field, not wholly without chart or compass, it is true, yet without much in the way of experience to light the way. In á large measure Ohio may be said to be the pioneer in *312 working out and reducing to a working basis the theories of workmen’s compensation. No statute enacted in these latter days has had to encounter so fierce and powerful an opposition as this particular class of legislation. The law is yet on trial. It has to justify itself for its maintenance before the bar of public opinion. To seriously cripple it by a construction that could readily be defended from a legal standpoint, and that would at the same time be held to be the more humane interpretation, would in the long run work great injury to the industrial classes as a whole. An injustice would likewise be done to the employers of Ohio, who alone are contributing the millions that go to make up the fund.
Courts will take judicial notice of the events going to make up the history of a state as well as the transactions and objects intimately connected with it. Why, then, should this court, contrary to the general knowledge possessed by the people of Ohio, blind itself to the real situation and content itself with a mere abstract construction of what might be included in the phrase “personal injuries,” realizing all the while that to grant the enlarged construction sought by the defendant in error would put in peril the splendid efforts that have been exerted by the public servants of Ohio, with much travail of soul, to provide compensation with promptness and certainty to the unfortunates killed and wounded in their battle for existence?
This court, with much show of logic and also authority, could construe this phrase as did the courts below. It is no difficult matter to bring *313 within the purview of the words “personal injuries sustained in the course of employment” occupational diseases incurred in course of employment. It can be further conceded that had the legislature, in enacting either the original or the present law, desired to make plain its intention to exclude occupational disease from participation in the fund, the exclusion could readily have been made by adding to the words “personal injuries” the qualifying phrase “by accident.”
As against all this the court feels impelled to follow both the executive and legislative construction of the word “injury” as employed in this act and to limit recovery of compensation to such as may have suffered injury otherwise than through disease, thereby giving to the legislative and executive construction the added force of judicial construction.
The court arrives at the clear legislative construction of the term by a. review of the history of the law in the seventy-ninth and eightieth general assemblies, in connection with the constitutional améndment on the subject of workmen’s compensation. We find that the first expression of the general assembly was had in the act of 1911, at which time there was no specific authority in the organic law for such a measure. Consequently the act was wholly voluntary.
In 1912 the constitutional convention submitted to the people of the state of Ohio what is now Section 35 of Article II, which, so far as it is important to consider in the instant case, provides that “For the purpose of providing compensation to work *314 men and their dependents, for death, injuries or occupational diseases, occasioned in the course of such workmen’s employment, laws may be passed,” etc. This proposition was ratified by the people by a most decisive majority and gave the authority necessary to the legislature for the enactment of the present act. In 1913 the existing compulsory act was passed.
It is to be observed that the constitutional amendment differentiates between injuries and occupational disease. It clearly recognizes three distinct classes for which provision may be made: (1) Injuries resulting in death, (2) nonfatal injuries and (3) occupational diseases; and all are to be limited to such as might be occasioned in due course of employment.
The present law specifically provides for compensation for two of these classes only and significantly omits any provision for compensation for the third class. Were this claim one that had accrued under the new law, the court could only construe the passage in dispute, in the light of the constitution, as wholly excluding any compensation for injury by .disease, whether occupational or otherwise. The legislature would have been within its constitutional rights had it included the third class, and its failure to do so, under the circumstances, makes of it a case of designed omission.
We note that the act now in force, enacted by the legislature after the constitutional authority had been granted, contains the same language in respect to the beneficiaries of the act as was employed in the original law, thereby.clearly demon *315 strating an intention on the part of both of the assemblies speaking on the subject to give the restricted rather than the enlarged meaning to the phrase “personal injuries * *
If this deduction be not justified, it at least must be necessarily conceded that the eightieth general assembly so construed the language of the seventy-ninth general assembly.
Thus we arrive at the legislative construction. To this may be added the thought that the subject of compensation for occupational disease occupies a distinct field of its own. It is so recognized not only in our constitution but by all humanitarians who have given the matter thoughtful attention. It is a vast subject, worthy of the most careful attention by the lawmaking body, and it was evidently the intention of both the seventy-ninth and eightieth general assemblies that Ohio should eventually enter into the larger , field, as is evidenced by the resolution on the subject of occupational diseases, enacted by both assemblies that legislated on the workmen’s compensation subject.
The victims of modern industrialism springing from disease incident thereto are only less numerous than those arising from pure accident, and. no sound policy can be suggested that should protect the one class and ignore the other, especially when the compensation system becomes firmly established. Until this is done the court will continue to construe the law as it was obviously intended by the legislature that it should be construed.
Authority is not wanting in support of the position taken by the court in this case. It really is not *316 needed, in view of the intention of the legislature of Ohio so definitely manifested, but may be briefly referred to nevertheless. Reference is made to the case of Adams v. Acme White Lead & Color Works, 182 Mich., 157, where the identical question before this court was passed upon by the supreme court of Michigan. • Quotation from the opinion of the court (p. 160) is made to this extent:
“It might be well to keep in mind the conditions sought to be remedied by the diverse workmen’s compensation enactments which have been adopted by several states of the Union and in foreign countries. The paramount object has been for the enactment of what has been claimed to be more just and humane laws to take the place of the common-law remedy for the compensation of workmen for accidental injuries received in the course of their employment, by the taking away and the removal of certain defenses in that class of cases. * * * Manifestly, the terms ‘personal injury’ and ‘personal injuries,’ above mentioned, refer to common-law conditions and liabilities, and do not refer to and include occupational diseases, because an employe had no right of action for injury or death due to occupational diseases at common law, but, generally speaking, only accidents, or, rather, accidental injuries, gave a right of action. We are not able to find a single case where an employe has recovered compensation for an occupational disease at common law. Certainly it can be said that in this state no employer has ever been held liable to the employe for injury from an occupational disease, but only for injuries caused by negligence. It seems to us that the whole scheme of this act nega *317 tives any liability of the employer for injury resulting from an occupational disease.”
A brief citation from the opinion of Judge Johnson, in the case of The State, ex rel., v. Creamer, 85 Ohio St., 349, 386, construing the original act, demonstrates that our own supreme court at that time had in mind the belief that the legislature had limited the provisions in the way of awards for industrial disasters to workers for which there had heretofore been a clear remedy at common law. In this opinion the court, through Johnson, J., says of the act: “It provides a plan of compensation for injuries * * * resulting from accidents to employes.”
And again, at page 389 of the same opinion, it is said: “The system which has been followed in this country, of dealing with accidents in industrial pursuits, is wholly unsound. * * * That there has been enormous waste under the present system, and that the action for personal injuries by employe against employer no longer furnishes a real and practical remedy, annoys and harasses both and does not meet the economic and social problem which has resulted from modern industrialism.”
The judgment of the court of appeals will be accordingly reversed, and the cause will be remanded to the court of common pleas with instructions to sustain the demurrer of the state to the petition on appeal of the claimant Brown.

Judgment reversed.

•Johnson, Donahue, Newman, Jones and Matthias, JJ., concur.